**Jason BERNARD, Plaintiff–Appellant,**

v.

**UNITED TOWNSHIP HIGH SCHOOL DISTRICT NUMBER 30, Defendant–Appellee.**

**No. 92–3638.**

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1993.

Decided Sept. 23, 1993.

---

John F. Doak (argued), Philip E. Koenig, Katz, McAndrews, Balch, Lefstein & Fieweger, Rock Island, IL, for plaintiff-appellant.

John A. Relias, James J. Zuehl (argued), Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant—appellee.

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Jason Bernard made a drawing of a high school and offered copies of this artwork for sale at local stores. He alleges that the United Township High School District ("District") of East Moline, Illinois, harassed him because he did not share his profits with the school's booster club, and that the District also intimidated retailers into pulling his drawing from their shops. He claims that these actions violated the Fourteenth Amendment by depriving him of liberty and property without due process of law. The trial judge held as a matter of law that the District's actions did not violate Bernard's due process rights and dismissed his complaint under Federal Rule of Civil Procedure 12(b)(6). 804 F.Supp. 1074. Bernard appeals and we affirm.

We review the dismissal of a complaint *de novo,* assuming the truth of its allegations and making all possible inferences in plaintiff's favor. *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). Bernard's complaint relates that he made a drawing of North Campus high school, which the District planned to close at the end of the 1990–1991 school year. Bernard decided to try to sell copies of this drawing, and he approached school officials with his idea, proposing to market the prints for the joint benefit of the District or the school's booster club and himself. When Bernard and the District did not reach an agreement, he chose to proceed on his own and had 1,500 copies of the drawing printed

for sale. At this point school officials began to threaten and harass Bernard to prevent him from marketing prints without a profit-sharing agreement with the school (the complaint does not detail what sort of threats and harassment occurred). Undeterred, Bernard began selling his work from local stores, and he gave his fledgling business the name "Architectural Renderings." But in December 1990 the District sent a letter to area retailers that read:

> Please be advised that prints of United Township High School North Campus are being sold in the community. You should be aware that United Township High School has not authorized or endorsed the sale of these prints.

> Anyone selling the prints should not make any express or implied representation that the school or the U.T. booster club is a party, has authorized, or will receive any financial benefit from the sale.

After these letters were sent, many retailers refused to continue stocking Bernard's prints and he lost substantial sales as a result. Bernard claims that he did not tell retailers that the school would benefit from the sales and he characterizes the District's letter as an implicit threat to merchants who continued to sell his prints. The briefs disclose a footnote to this story that does not appear in the complaint: Bernard was a high school senior in the District when these events occurred.

■■■ Bernard chooses to plead the legal effect of this narrative in due process terms. He claims that the District interfered with his occupation as an artist and marketer of prints and thus deprived him of liberty and property without due process of law. The due process clause of the Fourteenth Amendment protects one's liberty to follow a trade or occupation, as well as the property interests one may acquire in a particular job, from certain kinds of state infringement. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572–577, 92 S.Ct. 2701, 2706–2709, 33 L.Ed.2d 548. The question before us is whether Bernard has any liberty or property interest in selling his prints. As to liberty, the Fourteenth Amendment secures the "liberty to follow a trade, profession, or other

calling." *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1138 (7th Cir.1984). But our cases show that the Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits like Bernard's that are brought directly under the due process clause. "It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992).

Like the present case, *Wroblewski* reviewed the dismissal of a complaint under Rule 12(b)(6). Wroblewski ran a municipal marina until the city became unhappy with his performance and terminated his lease. When city officials solicited bids for a new marina operator, they promised to penalize bidders who subcontracted work back to Wroblewski, and thus effectively shut him out of employment at the marina. Like Bernard, Wroblewski claimed that the city interfered with his work opportunities with third parties. In affirming the dismissal of Wroblewski's complaint, we held that the city had not infringed his Fourteenth Amendment liberty because he was free to pursue marina work elsewhere, and thus had not been excluded from his trade. 965 F.2d at 455; *Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337, 1344 (7th Cir.1987). As the trial court correctly noted, Bernard claims only that the District interfered with his efforts to market one particular print. It did not stop him from selling that print altogether, nor did it prevent him from selling other prints via his "Architectural Renderings" business. The District's actions did not impede Bernard's right to pursue the "architectural drawings" trade in any way recognized by the Fourteenth Amendment. *Wroblewski,* 965 F.2d at 455; *Falk,* 818 F.2d at 1344.

Citing *Cowan v. Corley,* 814 F.2d 223 (5th Cir.1987), Bernard argues that the District may violate the due process clause without driving him out of business or excluding him from his trade. This proposition is true, but it does not save his complaint. *Cowan* re-

versed the dismissal of a complaint where the plaintiff, a tow-truck operator, was excluded from a trade association by the county sheriff. The facts suggested that the county was indeed trying to put the plaintiff out of business—and the trade association was a critical source of towing business because it dispatched members to accident scenes. Bernard in contrast only lost anticipated sales in a particular print, and this is not analogous to the interest at stake in *Cowan.*

Bernard also charges that the District deprived him of two property interests without due process. First, he claims that common-law copyright principles gave him exclusive ownership of his print and an attendant right to use and dispose of it as he chose. Second, he claims that he had oral contracts with retailers to sell his print. Bernard presses the contract argument in his discussion of liberty interests, but previous due process cases have analyzed contracts as a property right, and we see no reason to depart from this approach. *Weinstein v. University of Illinois,* 811 F.2d 1091, 1096 (7th Cir.1987) ("contractual rights are a kind of property"). Since the two property claims that Bernard alleges are different labels for the same harm, we will analyze his right to "dispose of the prints" as a contractual property right. Bernard concedes that the state may infringe this right in legislation or regulation, but he claims that the District's acts unreasonably interfered with his property interest in the print.

Unfortunately for Bernard, these property infringements (like the liberty interests discussed above) cannot be remedied by a suit directly under the Constitution. For as explained in *Weinstein,* although "the due process clause applies to efforts by the state to eliminate entitlements established by private contracts * * * the 'due process' of which the Fourteenth Amendment speaks is a suit under state law." 811 F.2d at 1096. In *Falk,* we further cabined constitutional protection of property rights by explaining that not all contracts create a property right in the first instance: "It would be surprising to equate every contractual entitlement to a property right." 818 F.2d at 1344. *Falk* and *Weinstein* teach that Bernard should seek due process in state court. To hold otherwise would elevate into constitutional questions many suits where state actors disrupt property interests that are tenuously held and hard to describe. This we decline to do. Property interests redressed by suits directly under the due process clause must be defined by "a legitimate claim of entitlement," and Bernard's oral contracts do not meet this requirement. *Roth,* 408 U.S. at 564, 92 S.Ct. at 2709.

Bernard's complaint also alleged that the District's conduct violated his First Amendment right of free expression. The trial court's analysis of this claim was arguably incorrect in certain respects, but since Bernard did not appeal this portion of Judge Mihm's decision, he has waived the argument and we will not discuss the matter. *Wroblewski,* 965 F.2d at 455 n. 1.

The foregoing discussion should not be read to approve of the conduct alleged in the complaint. If true, Bernard's charges give us pause. This student artist and would-be entrepeneur offered to share his profits with the school, but the parties failed to agree on terms. It is hard to understand what would motivate an educator to undermine such a student's success once the student decided to proceed on his own. Bernard remains free to pursue such questions in a state-law tort suit.

AFFIRMED.